UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GAMECHANGE SOLAR CORP., | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | :     Court No. 24-00174 <br> : |
| UNITED STATES, | : <br> : |
| Defendant. | : <br> : |

## COMPLAINT

Plaintiff GameChange Solar Corp. ("GameChange"), by and through undersigned counsel, hereby alleges and states as follows:

### ADMINISTRATIVE DECISION TO BE REVIEWED

1. GameChange contests the August 13, 2024, Final Scope Ruling issued by the U.S. Department of Commerce ("Commerce"), finding that GameChange's off-grid solar charging modules are within the scope of the antidumping duty ("AD") and countervailing duty ("CVD") orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules ("Solar Cells") from the People's Republic of China ("China"). U.S. Department of Commerce Memorandum, "Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Final Scope Ruling on GameChange Solar Corp.'s Off-grid Solar Charging Module" (A-570-979, C-570-980) (Aug. 13, 2024) ("Final Scope Ruling").

### JURISDICTION

2. The Court of International Trade has jurisdiction over GameChange's action pursuant to 19 U.S.C. § 1516a(a)(2)(B)(vi) and 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFF

3.     GameChange is the U.S. importer of the off-grid solar charging modules who requested the scope inquiry leading to the contested Commerce determination. GameChange requested and participated in Commerce's scope inquiry that resulted in the contested determination. GameChange therefore is a party to the proceeding and is entitled to commence this civil action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(a)(2)(B)(vi), (d).

## TIMELINESS OF THE ACTION

4.     On August 13, 2024, Commerce issued the Final Scope Ruling, which on August 15, 2024, was made publicly available through that day posting and on Commerce's Antidumping Duty and Countervailing Duty Centralized Electronic Service System ("ACCESS"). The thirtieth calendar day after August 13, 2024, fell on September 12, 2024. Consequently, Plaintiff timely filed its Summons on that day, within the deadline set by 19 U.S.C. § 1516a(a)(2)(A)(ii) on September 12, 2024 (*i.e.*, within 30 days after the date of mailing of a determination under 19 U.S.C. § 516a(a)(2)(B)(vi)).

5.     The thirtieth calendar day after September 12, 2024, falls on October 12, 2024, a Saturday, with Tuesday October 15, 2024, being the next business day, due to the Columbus Day federal holiday on October 14, 2024. GameChange is therefore timely filing this Complaint within the deadline set by 19 U.S.C. § 1516a(a)(2)(A)(ii) and Rule 3(a)(2) of the Court (*i.e.*, within 30 days after the filing of the Summons).

## BACKGROUND

6.     On December 7, 2012, Commerce issued AD/CVD orders on crystalline Solar Cells from China. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value,*

*and Antidumping Duty Order,* 77 Fed. Reg. 73,018 (Dec. 7, 2012) and *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Countervailing Duty Order,* 77 Fed. Reg. 73,017 (Dec. 7, 2012) (collectively, the "*Orders*").

7. The scope of the *Orders*, as expanded in subsequent proceedings, is as follows:

   The merchandise covered by the *Orders* is crystalline silicon photovoltaic (CSPV) cells, and modules, laminates, and panels, consisting of crystalline silicon photovoltaic cells, whether or not partially or fully assembled into other products, including, but not limited to, modules, laminates, panels, and building integrated materials.

   The *Orders* covers crystalline silicon photovoltaic cells of thickness equal to or greater than 20 micrometers, having a p/n junction formed by any means, whether or not the cell has undergone other processing, including, but not limited to, cleaning, etching, coating, and/or addition of materials (including, but not limited to, metallization and conductor patterns) to collect and forward the electricity that is generated by the cell.

   Merchandise under consideration may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, modules, laminates, panels, building-integrated modules, building-integrated panels, or other finished goods kits. Such parts that otherwise meet the definition of merchandise under consideration are included in the scope of the *Orders*.

   Excluded from the scope of the *Orders* are thin film photovoltaic products produced from amorphous silicon (a-Si), cadmium telluride (CdTe), or copper indium gallium selenide (CIGS).

   Also excluded from the scope of the *Orders* are crystalline silicon photovoltaic cells, not exceeding 10,000mm2 in surface area, that are permanently integrated into a consumer good whose function is other than power generation and that consumes the electricity generated by the integrated crystalline silicon photovoltaic cell. Where more than one cell is permanently integrated into a consumer good, the surface area for purposes of this exclusion shall be the total combined surface area of all cells that are integrated into the consumer good.

   Additionally, excluded from the scope of the *Orders* are panels with surface area from 3,450 mm2 to 33,782 mm2 with one black wire and one red wire (each of type 22 AWG or 24 AWG not more than 206 mm in length when measured from panel extrusion), and not exceeding 2.9 volts, 1.1 amps, and 3.19 watts. For the

purposes of this exclusion, no panel shall contain an internal battery or external computer peripheral ports.

Also excluded from the scope of the *Orders* are:

1) Off grid CSPV panels in rigid form with a glass cover, with the following characteristics:

 (A) a total power output of 100 watts or less per panel;

 (B) a maximum surface area of 8,000 cm2 per panel;

 (C) do not include a built-in inverter;

 (D) must include a permanently connected wire that terminates in either an 8mm male barrel connector, or a two-port rectangular connector with two pins in square housings of different colors;

 (E) must include visible parallel grid collector metallic wire lines every 1-4 millimeters across each solar cell; and

 (F) must be in individual retail packaging (for purposes of this provision, retail packaging typically includes graphics, the product name, its description and/or features, and foam for transport); and

2) Off grid CSPV panels without a glass cover, with the following characteristics:

 (A) a total power output of 100 watts or less per panel;

 (B) a maximum surface area of 8,000 cm2 per panel;

 (C) do not include a built-in inverter;

 (D) must include visible parallel grid collector metallic wire lines every 1-4 millimeters across each solar cell; and

 (E) each panel is

  1. permanently integrated into a consumer good;

  2. encased in a laminated material without stitching, or

  3. has all of the following characteristics: (i) the panel is encased in sewn fabric with visible stitching, (ii) includes a mesh zippered storage pocket, and (iii) includes a

> permanently attached wire that terminates in a female USB-A connector.

In addition, the following CSPV panels are excluded from the scope of the *Orders*:

1) Off-grid CSPV panels in rigid form with a glass cover, with each of the following physical characteristics, whether or not assembled into a fully completed off-grid hydropanel whose function is conversion of water vapor into liquid water:

    (A) A total power output of no more than 80 watts per panel;

    (B) A surface area of less than 5,000 square centimeters ($cm^2$) per panel;

    (C) Do not include a built-in inverter;

    (D) Do not have a frame around the edges of the panel;

    (E) Include a clear glass back panel; and

    (F) Must include a permanently connected wire that terminates in a two-port rectangular connector.

Additionally excluded from the scope of the *Orders* are off-grid small portable crystalline silicon photovoltaic panels, with or without a glass cover, with the following characteristics: (1) a total power output of 200 watts or less per panel; (2) a maximum surface area of 16,000 $cm^2$ per panel; (3) no built-in inverter; (4) an integrated handle or a handle attached to the package for ease of carry; (5) one or more integrated kickstands for easy installation or angle adjustment; and (6) a wire of not less than 3 meters either permanently connected or attached to the package that terminates in an 8mm diameter male barrel connector.

Also excluded from the scope of these *Orders* are off-grid crystalline silicon photovoltaic panels in rigid form with a glass cover, with each of the following physical characteristics, whether or not assembled into a fully completed off-grid hydropanel whose function is conversion of water vapor into liquid water:

    (A) A total power output of no more than 180 watts per panel at 155 degrees Celsius;

    (B) A surface area of less than 16,000 square centimeters ($cm^2$) per panel;

    (C) Include a keep-out area of approximately 1,200 $cm^2$ around the edges of the panel that does not contain solar cells;

> (D) Do not include a built-in inverter;
>
> (E) Do not have a frame around the edges of the panel;
>
> (F) Include a clear glass back panel;
>
> (G) Must include a permanently connected wire that terminates in a two-port rounded rectangular, sealed connector;
>
> (H) Include a thermistor installed into the permanently connected wire before the twoport connector; and
>
> (I) Include exposed positive and negative terminals at opposite ends of the panel, not enclosed in a junction box.
>
> Modules, laminates, and panels produced in a third-country from cells produced in China are covered by the *Orders*; however, modules, laminates, and panels produced in China from cells produced in a third-country are not covered by the *Orders*.
>
> Merchandise covered by these *Orders* is currently classified in the Harmonized Tariff System of the United States (HTSUS) under subheadings 8501.71.0000, 8501.72.1000, 8501.72.2000, 8501.72.3000, 8501.72.9000, 8501.80.1000, 8501.80.2000, 8501.80.3000, 8501.80.9000, 8507.20.8010, 8507.20.8031, 8507.20.8041, 8507.20.8061, 8507.20.8091, 8541.42.0010, and 8541.43.0010. These HTSUS subheadings are provided for convenience and customs purposes; the written description of the scope of the Orders is dispositive.

Final Scope Ruling at 2-4 (quoting *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Final Results of Changed Circumstances Reviews, and Intent to Revoke the Antidumping and Countervailing Duty Orders, in Part,* 88 Fed. Reg. 42,690 (July 3, 2023)).

8. On September 14, 2023, GameChange filed a Scope Ruling Application with Commerce seeking to determine whether GameChange's small off-grid solar charging modules (part nos. GC4291F, GC4291FE, GC3291F, or GC3291E) fall within scope exclusions under the *Orders* or, alternatively, are excluded under 19 C.F.R. § 351.225(k)(2). GameChange Solar's Certain Small Off-Grid Solar Charging Modules for Powering Solar Tracking Devices Scope Request,

Crystalline Silicon Photovoltaic Cells, Whether or not Assembled Into Modules, From the People's Republic of China (A-570-979, C-570-980 ) (Sept. 14, 2023).

9. In its Scope Ruling Application, GameChange demonstrated with record evidence that, *inter alia*:

> Part number GC4291F are solar-powered charging module of GameChange Solar's Genius Tracker, which enables large-scale solar panel racking systems to reposition in accordance with the position of the sun. The dimensions of the charging module subject to this request are approximately 1855 mm in length and 395 mm wide. The cells are 52 mm in length and 79.37 mm wide. The maximum power output for each unit is 60 watts. Each cell contains visible metallic lines across the cell. There is no built-in inverter. The small off-grid charging modules are exported to the United States in separate packages and sold and delivered directly to the to end users of the solar trackers for which these charging modules are designed and used. The individual units that are each separately and individually packed are consolidated for transport and are protected with four pieces of cardboard on each corner of the individual units. Each unit can then easily be separated upon importation for delivery to end-users and ultimate installation into solar tracking devices at their final destination. The Genius Trackers, of which part number GC4291F is a component, are available for sale through GameChange catalogs, in-person and on-line.

*Id*. at 3-4.

10. Throughout the Scope Ruling Application, GameChange demonstrated that its off-grid solar charging modules: (1) meet the criteria for the off-grid solar modules with a glass cover exclusion; (2) meet the criteria for the exclusion for silicon photovoltaic cells permanently integrated into consumer goods with a primary function other than power generation; and (3) alternatively, should be excluded from the scope under 19 C.F.R § 351.225(k)(2). *Id*. at 9-18.

11. On October 17, 2023, Commerce initiated a scope inquiry into GameChange's off-grid solar charging modules. *See* U.S. Department of Commerce Memorandum, "Antidumping Duty and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Deemed Initiation of Scope Inquiry" (A-570-979, C-570-980) (Oct. 17, 2022).

12. On February 12, 2024, Commerce issued a supplemental questionnaire to GameChange, to which GameChange responded on March 8, 2024.

13. On July 8, 2024, and August 1, 2024, Commerce issued second and third supplemental questionnaires to GameChange, to which GameChange responded to on July 22, 2024, and August 5, 2024, respectively.

14. Commerce issued its Final Scope Ruling on August 13, 2024. First, Commerce found that GameChange's off-grid solar charging modules did not meet the requirements of the *Orders*' exclusion for off-grid solar modules with a glass cover. Commerce stated that to meet this exclusion, a product must:

> (1) have a total power output of 100 watts or less; (2) have a maximum surface area of 8,000cm2 per module; (3) not have a built-in inverter; (4) have a permanently connected wire that terminates in either an 8mm barrel connector, or a two-port rectangular connector with two pins in square housings of different colors; (5) have visible parallel grid collector metallic wire lines every 1-4 millimeters across each solar cell; and (6) be packaged in individual retail packing . . . .

Final Scope Ruling at 7.

15. In addressing the six criteria for this exclusion, Commerce concluded that GameChange's off-grid solar modules did not satisfy the two elements. Specifically, Commerce found that "it is clear that the charging module does not meet two of the six criteria in the . . . exclusion, namely: (1) have a permanently connected wire that terminates in either 8 mm male barrel connector, or a two-port rectangular connector with two pins in square housings of different colors;" and (2) "be packaged in individual retail packaging." Final Scope Ruling at 10.

16. Second, Commerce found that GameChange's off-grid solar modules did not meet the exclusion for silicon photovoltaic cells not exceeding 10,000mm2 and permanently integrated into a consumer good whose function is other than power generation and that consumes the electricity generate by the integrated crystalline silicon photovoltaic cells. *Id*. at 11-12.

Specifically, Commerce found that: (1) "It is not clear that the solar cells in the solar charging module are integrated into a consumer good given that the charging module is used to operate the solar modules in the array that produces electricity for consumers," and; (2) "Even if the charging module were considered to be a consumer good, its function is not something other than power generation. Rather the charging module's only function is power generation." *Id*. at 12.

17. Finally, Commerce rejected GameChange's argument under 19 C.F.R. § 351.225(k)(2), finding that "GameChange has not argued, or provided any evidence showing, that the solar cells in the charging module differ physically from the crystalline photovoltaic cells covered by the scope of the *Orders*." *Id*. at 12.

18. In reaching its findings in the Final Scope Ruling, Commerce improperly disregarded, discounted, and mischaracterized contradictory information on the record including photographs submitted by GameChange.

## STATEMENT OF CLAIMS

### COUNT ONE

19. Paragraphs 1 to 18 are adopted and incorporated herein by reference.

20. In its Final Scope Ruling, Commerce analyzed whether GameChange's off-grid solar charging modules fell within the two scope exclusions or was otherwise outside the Scope of the *Orders* under 19 C.F.R. § 351.225(k)(2). In reaching its findings in the Final Scope Ruling, Commerce improperly disregarded, discounted, and mischaracterized contradictory information on the record including photographs submitted by GameChange.

21. Commerce's determination that GameChange's off-grid solar charging modules did not meet the criteria for the off-grid solar modules with glass covers exclusion was unsupported by

substantial evidence, unreasonable, arbitrary, capricious, and otherwise not in accordance with law.

22. Commerce's determination that GameChange's off-grid solar charging modules did not meet the criteria for the solar modules integrated into consumer goods with a function other than power generation exclusion was unsupported by substantial evidence, unreasonable, arbitrary, capricious, and otherwise not in accordance with law.

23. Commerce's determination that GameChange's off-grid solar charging modules do not differ physically from Solar Cells covered by the scope of the *Orders* under 19 C.F.R. § 351.225(k)(2) was unsupported by substantial evidence, unreasonable, arbitrary, capricious, and otherwise not in accordance with law.

## **PRAYER FOR RELIEF**

WHEREFORE, GameChange requests that this Court:

(a)  Hold that Commerce's Final Scope Ruling is unsupported by substantial record evidence and otherwise not in accordance with law with respect to the claims advanced in this Complaint;

(b)  Remand the Final Scope Ruling to Commerce for a determination consistent with the opinion of this Court; and

(c)  provide such other and further relief as the Court deems just and proper.

                Respectfully submitted,

                GRUNFELD, DESIDERIO, LEBOWITZ
                SILVERMAN & KLESTADT LLP

                */s/ Jordan C. Kahn*
                Ned H. Marshak
                Andrew T. Schutz
                Jordan C. Kahn

                *Counsel to Plaintiff*
                *GameChange Solar Corp*.

Dated: October 15, 2024

# CERTIFICATE OF SERVICE AND NOTICE TO INTERESTED PARTIES

### *GameChange Solar Corp. v. United States*
### CIT Court No. 24-00174

Pursuant to Rule 3(f) of the Rules of the Court of International Trade, I certify that on October 15, 2024, copies of the foregoing Complaint was served upon the following individuals and notified all the interested parties who were a party to the proceeding below, by certified mail, return receipt requested:

**UPON THE UNITED STATES**
Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
**U.S. Department of Justice**
Room 346
26 Federal Plaza
New York, New York 10278

Director, Civil Division
Commercial Litigation Branch
**U.S. Department of Justice**
1100 L Street, NW
Washington, DC 20530

**UPON THE U.S. DEPARTMENT OF COMMERCE**
General Counsel
**U.S. Department of Commerce**
14th Street & Constitution Avenue, NW
Washington, DC 20230

Jeanne E. Davidson, Esq.
Civil Division
Commercial Litigation Branch
**U.S. Department of Justice**
1100 L Street, NW
Washington, DC 20530

John D. McInerney, Esq.
Office of the Chief Counsel for
Import Administration
**U.S. Department of Commerce**
14th Street & Pennsylvania Ave., NW
Washington, DC 20230

**UPON THE PETITIONER**
**On Behalf of American Alliance for Solar Manufacturing.**
Laura El-Sabaawi, Esq.
**Wiley Rein LLP**
2050 M Street, NW
Washington, DC 20036

*/s/ Jordan C. Kahn*
Jordan C. Kahn