**Slip Op. 26-125**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **GAMECHANGE SOLAR CORP.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant. | **Before: Timothy C. Stanceu, Judge**<br><br>**Court No. 24-00174** |

**OPINION**

[Denying plaintiff's motion for judgment on the agency record in an action contesting an administrative ruling that a product is within the scope of antidumping duty and countervailing duty orders]

Dated: October 13, 2026

*Jordan C. Kahn*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, D.C., argued for plaintiff GameChange Solar Corp. With him on the brief was *Ned H. Marshak*.

*Patricia M. McCarthy*, Director, Commercial Litigation Branch, U.S. Department of Justice, Washington, D.C., argued for defendant United States. With her on the brief were *Brett A. Shumate*, Assistant Attorney General, *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, and *Kristin E. Olson*, Trial Attorney, Commercial Litigation Branch, of Washington, D.C. *Joseph Grossman-Trawick* and *Jack Dunkelman*, Attorneys, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, Washington, D.C., were of counsel.

Stanceu, Judge: Plaintiff GameChange Solar Corp. ("GameChange") contests a determination by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department"), that its imports of an "off-grid solar

charging module" ("charging module") are within the scope of antidumping duty and countervailing duty orders on certain crystalline silicon photovoltaic cells from the People's Republic of China ("China").

Before the court is plaintiff's motion for judgment on the agency record under USCIT Rule 56.2. Pl.'s Mot. for J. on the Agency R. (June 11, 2025), ECF Nos. 19 (conf.), 20 (public) ("Pl.'s Mot."). The court will deny plaintiff's motion and enter judgment in favor of defendant.

## I. Background

### A. The Antidumping and Countervailing Duty Orders

Commerce published the antidumping duty and countervailing duty orders involved in this litigation (the "Orders") in 2012. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 77 Fed. Reg. 73,018 (Int'l Trade Admin. Dec. 7, 2012) ("*AD Order*"); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Countervailing Duty Order*, 77 Fed. Reg. 73,017 (Int'l Trade Admin. Dec. 7, 2012) ("*CVD Order*").

### B. The Contested Determination

Following an administrative proceeding (the "scope inquiry"), Commerce issued the contested determination (the "Scope Ruling") as "Crystalline Silicon Photovoltaic

Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Final Scope Ruling on GameChange Solar Corp.'s Off-grid Solar Charging Module" (Int'l Trade Admin. Aug. 13, 2024), P.R. Doc. 21, ECF No. 35 ("*Scope Ruling*").[1] Commerce issued the Scope Ruling in response to a request (the "Scope Ruling Application") submitted by GameChange. *GameChange Solar's Certain Small Off-Grid Solar Charging Modules For Powering Solar Tracking Devices Scope Request, Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China* (Sept. 14, 2023), P.R. Doc. 1, ECF No. 35 ("*Scope Ruling Application*").

**C. Proceedings in the Court of International Trade**

Plaintiff commenced this action in September 2024, Summons (Sept. 12, 2024), ECF No. 1; Compl. (Oct. 15, 2024), ECF No. 7, and filed its motion for judgment on the agency record on June 11, 2025. Pl.'s Mot. Defendant responded on February 20, 2026. Def.'s Resp. to Pl.'s Rule 56.2 Mot. for J. on the Agency R. (Feb. 20, 2026), ECF Nos. 28 (conf.), 29 (public) ("Def.'s Resp."). Plaintiff replied on May 12, 2026. Pl.'s Reply Br. (May 12, 2026), ECF Nos. 32 (conf.), 33 (public) ("Pl.'s Reply"). The court held an oral argument on plaintiff's motion on September 29, 2026. Appearance Sheet (Sept. 29, 2026), ECF No. 39.

---

[1] Documents in the Joint Appendix, ECF Nos. 34 (conf.), 35 (public) are cited herein as "P.R. Doc. __." All citations to record documents are to the public versions.

## II. Discussion

### A. Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which grants jurisdiction over civil actions brought under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[2] Among the decisions that may be contested according to Section 516A is a determination of "whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing duty order." *Id.* § 1516a(a)(2)(B)(vi).

In reviewing the Scope Ruling, the court must set aside "any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Id*. § 1516a(b)(1)(B)(i).

### B. The Merchandise at Issue

Plaintiff described the product at issue as a "small off-grid charging module" that is "solar-powered." *Scope Ruling Application* 3. The charging module contains "crystalline silicon photovoltaic cells" that convert sunlight into electricity. *Id*. at 4-5. The charging module is a "component" of another product, GameChange's "Genius Tracker." *Id*. at 3-4. The Genius Tracker is a device "which enables large-scale solar

---

[2] Citations to the United States Code and to the Code of Federal Regulations are to the 2024 editions.

panel racking systems to reposition in accordance with the position of the sun." *Id*. at 3. The charging module "is used to power GameChange Solar's Genius Tracker." *Id*. at 5. The charging module is "produced in and exported from China." *Id.* at 4.

### C. Scope Language in the Orders

The general scope language in the Orders, in pertinent part, is as follows:

> The merchandise covered by this order is crystalline silicon photovoltaic cells, and modules, laminates, and panels, consisting of crystalline silicon photovoltaic cells, whether or not partially or fully assembled into other products, including, but not limited to, modules, laminates, panels and building integrated materials.
>
> This order covers crystalline silicon photovoltaic cells of thickness equal to or greater than 20 micrometers, having a p/n junction formed by any means, whether or not the cell has undergone other processing, including, but not limited to, cleaning, etching, coating, and/or addition of materials (including, but not limited to, metallization and conductor patterns) to collect and forward the electricity that is generated by the cell.
>
> Merchandise under consideration may be described at the time of importation as parts for final finished products that are assembled after importation, including, but not limited to, modules, laminates, panels, building-integrated modules, building-integrated panels, or other finished goods kits. Such parts that otherwise meet the definition of merchandise under consideration are included in the scope of this order.

*AD Order*, 77 Fed. Reg. at 73,018–19; *CVD Order*, 77 Fed. Reg. at 73,017.

### D. The Scope Ruling

Finding "the plain language of the scope of the *Orders* to be dispositive," *Scope Ruling* at 7, Commerce concluded in the Scope Ruling that the charging module "is covered by the scope of the *Orders*," *id*. at 12. In the Scope Ruling Application, GameChange argued that each of two exclusions, the "consumer good exclusion" and

the "off-grid CSPV panel exclusion," described the charging module and placed it outside the scope of the Orders. *Scope Ruling Application* 10-12. Commerce rejected both arguments. *Scope Ruling* 7, 11.

### E. Plaintiff's Arguments

In its Rule 56.2 motion, GameChange contests the Scope Ruling on essentially three grounds. GameChange argues that the Scope Ruling failed to "identify applicable plain language" in the Orders describing the charging module and, therefore, that Commerce was required to "proceed with further analysis" under 19 C.F.R. § 351.225(k) of the Department's regulations. Pl.'s Mot. 1, 27-30. GameChange argues, further, that Commerce erroneously determined that the charging module did not satisfy the consumer good exclusion provided for in the Orders. *Id.* at 15-18. Third, GameChange submits that Commerce also erred in determining that the charging module did not satisfy the requirements of the off-grid CSPV panel exclusion. *Id.* at 19-27.

### F. The Scope Ruling Is Not Invalid for Failure to Identify Descriptive Scope Language

In making a scope determination, Commerce "will consider the language of the scope and may make its determination on this basis alone if the language of the scope, including the descriptions of merchandise expressly excluded from the scope, is dispositive." 19 C.F.R. § 351.225(k)(1). Pointing to the requirement to "consider the language of the scope," GameChange argues that "Commerce's analysis merely analyzed two scope exclusions and did not identify specific scope language through

which the charging module would be otherwise subject."[3] Pl.'s Mot. 28. Plaintiff asks the court to "remand for Commerce to identify specific scope language covering GameChange's charging module," maintaining that "[u]nless and until such language can be identified and judicially confirmed, Commerce remains obligated to proceed with further analysis under 19 C.F.R. § 351.225(k)." Pl.'s Mot. 28.

As plaintiff notes, Commerce based its determination entirely on the scope language of the Orders. The "Analysis" portion of the Scope Ruling (under heading VII) begins with the following text: "We find the plain language of the scope of the *Orders* to be dispositive with respect to whether the charging module is covered by the *Orders*. Therefore, we based our analysis below on the plain language of the scope of the *Orders* and did not analyze the criteria in 19 CFR 351.225(k)(1) or (k)(2) (other than to respond to GameChange's comments)." *Scope Ruling* 7.

The court rejects the argument that the Scope Ruling is invalid for failure to identify specific scope language describing the charging module. The first sentence in the scope language bears repeating here: "The merchandise covered by this order is crystalline silicon photovoltaic cells (CSPV), and *modules*, laminates, and *panels*, *consisting of crystalline silicon photovoltaic cells*, *whether or not partially or fully assembled*

---

[3] At oral argument, defendant noted that GameChange's Scope Ruling Application did not argue that the general scope language of the Orders, i.e., the general language preceding the exclusions, does not describe the charging modules. GameChange Solar Corp. v. United States, No. 24-174, at 37:10 (oral argument) (C.I.T. Sept. 29, 2026); *see also* Def.'s Resp. 10.

*into other products*, including, but not limited to, modules, laminates, panels and building integrated materials." *AD Order*, 77 Fed. Reg. at 73,018–19 (emphasis added); *CVD Order*, 77 Fed. Reg. at 73,017. With respect to the express inclusion of "modules . . . and panels, consisting of crystalline silicon photovoltaic cells," GameChange itself describes its product as a "module" and does not dispute that it contains crystalline silicon photovoltaic cells. While the charging module does not consist *entirely* of crystalline silicon photovoltaic cells, GameChange does not raise an argument based on that distinction, and even had it done so, the scope language itself would refute it, as it also places within the scope modules and panels of crystalline silicon photovoltaic cells that are "assembled into other products." *Id*. In contesting the Scope Ruling, GameChange has raised no factual issues that possibly could place its product outside the terms of the first sentence in the general scope language. Nor does it claim that the scope language is impermissibly broad. Thus, its argument that the Scope Ruling is invalid for failure to identify pertinent descriptive scope language reduces to a contention that the Scope Ruling failed to state the obvious.[4]

The requirement in 19 C.F.R. § 351.225(k)(1) that Commerce "will consider the language of the scope" is satisfied by the statement in the Scope Ruling that Commerce found the language of the scope to be dispositive. Commerce could not have found the

---

[4] At oral argument, plaintiff conceded that the first sentence of the scope language of the Orders describes the charging module. GameChange Solar Corp., No. 24-174, at 03:17 (oral argument) (C.I.T. Sept. 29, 2026).

scope language to be dispositive had it not "considered" it. Contrary to GameChange's argument, the regulation does not require more than that and, therefore, is not a basis upon which the court may invalidate the Scope Ruling.

### G. Commerce Did Not Err in Determining that the Charging Module Does Not Satisfy the Requirements of the Consumer Good Exclusion

The Orders contain an exclusion from the scope (the "consumer good" exclusion), providing as follows:

> [E]xcluded from the scope of this order are crystalline silicon photovoltaic cells, not exceeding 10,000mm$^2$ in surface area, that are permanently integrated into a consumer good whose function is other than power generation and that consumes the electricity generated by the integrated crystalline silicon photovoltaic cell. Where more than one cell is permanently integrated into a consumer good, the surface area for purposes of this exclusion shall be the total combined surface area of all cells that are integrated into the consumer good.

*AD Order*, 77 Fed. Reg. at 73,019; *CVD Order*, 77 Fed. Reg. at 73,017. In the Scope Ruling, Commerce determined that the charging module did not qualify for the consumer good exclusion, concluding that the charging module was not a consumer good and that "its function is not something other than power generation." *Scope Ruling* 12.

While it cannot be disputed that the crystalline silicon photovoltaic cells within the charging module are permanently integrated into the charging module, the exclusion requires much more. The product into which the cells are integrated must be a "consumer good," the function of that good must be "other than power generation," and that good must "consume[] the electricity generated by the integrated crystalline

silicon photovoltaic cell." *AD Order*, 77 Fed. Reg. at 73,019; *CVD Order*, 77 Fed. Reg. at 73,017.

In the Scope Ruling, Commerce concluded that the charging module is not a "consumer good," defining "consumer goods" according to a Mirriam Webster dictionary definition as "goods that directly satisfy human wants." *Scope Ruling* 12 (footnote omitted). The court need not decide whether the charging module is a "consumer good" within the meaning of that term as used in the Orders. Commerce found as a fact that "the only function of the charging module is power generation," *id.*, and that factual finding, if valid as supported by substantial record evidence, is alone sufficient to support the Department's conclusion that the charging module does not qualify for the consumer good exclusion.[5]

The Department's finding that the charging module functions only to generate power is unquestionably valid. In the Scope Ruling Application, GameChange itself stated that "[t]he small off-grid solar charging module covered by this scope ruling application is used to *power* GameChange Solar's Genius Tracker solar tracking device that assists solar racking systems to change position along with the movement of the sun across the sky." *Scope Ruling Application* 5 (emphasis added). The Scope Ruling Application identified no other function that the charging module performs.

---

[5] Commerce did not address the further requirement that the good under consideration consume the electricity produced by the photovoltaic cells.

Plaintiff's Rule 56.2 motion addresses the "function" issue by describing the function the Genius Tracker performs when incorporating a charging module. Specifically, GameChange asserts that the function of the Genius Tracker is not power generation but enabling customers to track the movement of the sun with separately-purchased solar panels. Pl.'s Mot. 16. (citing *Scope Ruling Application* 1). GameChange maintains that "Commerce ignored evidence demonstrating that the charging module is sold directly to end-users as part of the Genius Tracker, a standalone product that 'assist[s] solar racking systems to change position along with the movement of the sun across the sky.'" Pl.'s Mot. 16 (quoting *Scope Ruling Application* 1). "The charging module is permanently integrated into the Genius Tracker, as demonstrated by GameChange's marketing materials," enabling the "separately-purchased solar panels" of the customers "to track the sun." *Id*. at 16. Plaintiff summarizes its argument by positing that "[t]he fact that electricity is ultimately generated from solar panels that are not part of the Genius Tracker does not undermine the qualifying criterion that a charging module is purchased by GameChange customers for both consumption and a function other than power generation," *id.* at 16-17, and that "Commerce's analysis should have analyzed whether the function of the Genius Tracker is power generation," *id.* at 17.

GameChange's argument on the function of the charging module is to no avail. The consumer good exclusion expressly and unambiguously requires that the imported

good under consideration in the Department's scope inquiry have a function other than power generation. That good is the charging module, not the Genius Tracker system of which it is designed and built to be a component part. GameChange argues that Commerce "found the exclusion inapplicable based on an overly narrow focus on the module," Pl.'s Reply 3, but focusing on the module, and not the Genius Tracker that incorporates it, is exactly what the language of the consumer good exclusion required it to do.

### H. Commerce Did Not Err in Determining that the Charging Module Does Not Satisfy the Requirements of the Off-Grid CSPV Panel Exclusion

In December 2018, Commerce established the "off-grid CSPV panel exclusion" by issuing a "Partial Revocation Order" following changed circumstance reviews. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Changed Circumstances Reviews, and Revocation of the Antidumping and Countervailing Duty Orders, in Part*, 83 Fed. Reg. 65,344, 65,344–45 (Int'l Trade Admin. Dec. 20, 2018) ("*Partial Revocation Order*").

The Partial Revocation Order established a scope exclusion for "[o]ff-grid CSPV [crystalline silicon photovoltaic cells] panels in rigid form with a glass cover, with the following characteristics":

(A) A total power output of 100 watts or less per panel;
(B) a maximum surface area of 8,000 $cm^2$ per panel;
(C) do not include a built-in inverter;

(D) must include a permanently connected wire that terminates in either an 8mm male barrel connector, or a two-port rectangular connector with two pins in square housings of different colors;
(E) must include visible parallel grid collector metallic wire lines every 1–4 millimeters across each solar cell; and
(F) must be in individual retail packaging (for purposes of this provision, retail packaging typically includes graphics, the product name, its description and/or features, and foam for transport).

*Id.* Commerce interpreted the exclusion to require a good to satisfy all six criteria and found that the charging module failed to conform to criterion D and criterion F. *Scope Ruling* 10. With respect to criterion D, Commerce noted that GameChange stated in a questionnaire response that it used a connector "preferable to the 8mm barrel connector . . . for the outdoor use of the charging module, Part Number GC4291F." *Id.* at 11 (citing GameChange's questionnaire response dated July 22, 2024 at 4). Commerce stated, further, that "GameChange has not claimed, nor has it provided evidence to demonstrate, that the charging module has a permanently connected wire that terminates in a two-port rectangular connector with two pins in square housings of different colors." *Id*. As to criterion F, Commerce found that "GameChange's charging modules are not individually packaged for retail sale, but rather, are shipped as one part of a larger product, the Genius Tracker." *Id*. (citing GameChange's questionnaire response dated March 8, 2024 at 6). Commerce also found that "record evidence shows that multiple charging modules are packed together and strapped with banding, covered with cardboard, and shrink wrapped with a packing list with bar codes and certain information on it attached to the outside of the cardboard." *Id*. (citing

GameChange's questionnaire response dated July 22, 2024 at 6 & Exhibit SSQ5a). Commerce made no finding as to a built-in inverter and considered the record unclear as to total power output, surface area, and distance between the visible parallel grid collector metallic wire lines. *Id*. at 8-10.

GameChange's argument concerning criterion D is essentially that nonconformity with the specific requirements of this criterion should not disqualify its product from the off-grid CSPV panel exclusion: "While GameChange acknowledges that its connector is not technically an 8mm barrel connector, this fact does not constitute sufficient reason for this Court to affirm Commerce's decision." Pl.'s Mot. 27. But it plainly does. As Commerce correctly reasoned, the exclusion language unambiguously requires that all six criteria be satisfied. GameChange insists, nevertheless, that "Commerce's reasoning is flawed with respect to all of the other factors detailed above, and the minor difference in the size of the connector is not, standing alone, sufficient reason for Commerce to have decided that the exclusion does not apply." *Id*. Plaintiff adds that "assuming *arguendo* that this Court agrees with GameChange's position with respect to the other characteristics, it should remand Commerce's decision to the agency for further analysis." *Id*. This the court cannot do.

Plaintiff's argument on retail packaging fares no better. Based on record photographs, GameChange asserts that "the charging module: (1) is 'packaged for sale to the ultimate consumers of the product'; (2) has 'information regarding the product

features on the packaging'; and (3) is sold for 'consumption rather than resale.'" *Id*. at 25 (citing *Scope Ruling* 11).

Commerce found as a fact that multiple charging units are packaged together. *Scope Ruling* 11 (citing GameChange's questionnaire response dated July 22, 2024 at 6 & Exhibit SSQ5a). Plaintiff does not contest this finding, but plaintiff's counsel emphasized at oral argument that the bulk shipments in which charging modules were imported separated each individual charging module with surrounding cardboard and that the bulk packaging displayed product information. GameChange Solar Corp., No. 24-174, at 29:53, 1:00:28 (oral argument) (C.I.T. Sept. 29, 2026). The rest of plaintiff's argument focuses principally on the packaging of the Genius Tracker, not the packaging of the charging module.

The packaging of the Genius Tracker is not relevant to whether the charging module satisfies criterion F, which imposes a requirement on the packaging of the good under consideration, not its ultimate packaging for sale as part of another product. Criterion F requires more than retail packaging—it requires "individual" retail packaging. Plaintiff's counsel conceded at oral argument that the charging modules, although separated individually by cardboard, were not individually labeled with information for retail sale within the bulk bundles. *Id.*

In summary, the uncontested facts pertaining to the packaging of the charging module support the Department's determination that criterion F was not satisfied.

## III. Conclusion

For the reasons stated above, the court rejects the arguments plaintiff puts forth to contest the Scope Ruling. The court will deny plaintiff's motion for judgment on the agency record and enter judgment for defendant pursuant to USCIT Rule 56.2.

/s/ Timothy C. Stanceu
Timothy C. Stanceu, Judge

Dated: October 13, 2026
New York, New York